UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
SOUTHERN DIVISION

JOHN WATSON,
706 Trenary Cir.
Fort Washington, MD 20744-5377

    Plaintiff,

v.

SYNCHRONY BANK, N.A.,
170 West Election Rd, Ste 125,
Drraper, UT 84020

    Defendant.

CASE NO.:

**JURY TRIAL DEMANDED**

## COMPLAINT

1. In this case, the Defendant called the Plaintiff more than 400 times using an automated dialer in order to collect an alleged debt. The Defendant continued to make the automated collection calls even after the Plaintiff told them to stop. In doing so, the Defendant harmed the Plaintiff when it violated the Telephone Consumer Protection Act, the Maryland Telephone Consumer Protection Act, the Maryland Consumer Debt Collection Act, the Maryland Consumer Protection Act, and committed common law Invasion of Privacy.

2. The persistent robo-calls and collection attempts caused actual injury and harm to the Plaintiff, including physical manifestations of emotional distress in the form of loss of sleep, loss of appetite, panic attacks, rushes of adrenaline, anxiety, and interference with the ability to concentrate.

3. Unwanted "Robocalls" are the #1 consumer complaint in America today. Americans were bombarded with 3.3 billion robocalls last month. That is 111.2 million per day and 4.6 million per hour.[1]

4. The people complaining about harassing robocalls is increasing at an alarming rate.

5. Synchrony Bank robocalled and texted the Plaintiff over 400 times.

6. Synchrony Bank has a corporate policy to robocall people thousands of times.

7. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

8. Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

9. The TCPA was enacted to prevent companies like Synchrony Bank from invading American citizens' privacy and prevent illegal robocalls.

---

[1] YouMailRobocall Index, available at http://Robocallindex.com

10. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

11. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

12. This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. *Krakauer v. Dish Network, L.L.C.* NO. 18-1518, 2019 WL 2292196 at *2 (4th Cir. May 30, 2019).

## JURISDICTION AND VENUE

13. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

14. Violations described in the Complaint occurred while Plaintiff was in Fort Washington, Maryland.

## FACTUAL ALLEGATIONS

3

15. Plaintiff is a natural person and citizen of the State of Maryland, residing in Fort Washington, Maryland.

16. Plaintiff is an "alleged debtor."

17. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

18. Defendant is a bank supervised by the Federal Deposit Insurance Corporation (FDIC) with its principle place of business in Utah, and conducts business in the State of Maryland.

19. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (703) 217-1004.

20. Plaintiff was the "called party" during each phone call subject to this lawsuit.

21. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times in one day, calling his cellular phone, home telephone number and his work phone number, with such frequency as can reasonably be expected to harass.

22. "Express consent" is narrowly construed by the Courts.

23. It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an "automatic telephone dialing system" (ATDS).

24. It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an ATDS for each account they were calling on.

25. Defendant was put on notice Plaintiff did not want the Defendant contacting him.

26. Defendant was told repeatedly that to stop calling and texting the Plaintiff.[2]

---

[2] Defendant should have the call logs showing the exact number of calls and the recordings which should illustrate exactly what was said to the Defendant.

4

27. Plaintiff revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

28. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

29. Defendant made at least one call to (703) 217-XXXX.

30. Defendant sent at least one text to (703) 217-XXXX.

31. Defendant made at least one call to (301) 292-XXXX.

32. Defendant made at least one call to (703) 778-XXXX.

33. Defendant made at least one call to (703) 217-XXXX using an ATDS.

34. Defendant sent at least one text to (703) 217-XXXX using an ATDS.

35. Defendant made at least four hundred (400) calls to (703) 217-XXXX.

36. Each call or text the Defendant made to (703) 217-XXXX, in the last four years was made using an ATDS.

37. Defendant has called or texted other people's cell phones, home phones and work phones without their express consent.

38. Each call the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

39. The calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

40. Plaintiff repeatedly requested the Defendant to stop calling his cell phone, home phone and work phone, however, the Defendant continued to make calls.

41. Plaintiff told Defendant to stop calling shortly after the calls started in or about November 2019.

42. Plaintiff told Defendant to stop calling on August 4, 2020.

43. Plaintiff's conversations with the Defendant putting them on notice that he did not want more phone calls were ignored.

44. Defendant has recorded at least one conversation with the Plaintiff.

45. Defendant has recorded numerous conversations with the Plaintiff.

46. Defendant has made over four hundred (400) calls to Plaintiff's aforementioned cellular telephone, home telephone, and work telephone numbers in or about the past four (4) years which will be established exactly once Defendant turns over their dialer records.

47. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls and texts.

48. Defendant has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

49. By effectuating these unlawful phone calls, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

50. Defendant's aggravating and annoying phone calls and text messages trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

51. Defendant's phone calls harmed Plaintiff by wasting his time and causing embarrassment at work.

52. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007). Defendant's phone calls and texts harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

53. Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

54. Defendant's corporate policy and procedures provided no means for the Plaintiff to have his aforementioned cellular number removed from the call list.

55. Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

56. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint. The Defendant has been sued civilly in Federal Court 190 times since 2016 (See Pacer.gov)

57. In the last 3 years, the Defendant has had 4,763 complaints reported to the Better Business Bureau (BBB), of which 2,543 of those complaints are classified as being related to "Billing/Collection Issues." (See BBB.org)

58. Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

59. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

60. Defendant violated the TCPA and MTCPA, with respect to the Plaintiff.

61. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

62. Defendant also violated the Maryland Consumer Debt Collection Act, the Maryland Consumer Protection Act, and committed common law Invasion of Privacy.

## COUNT I
**(Violation of the TCPA)**

63. Plaintiff incorporates Paragraphs one (1) through sixty-one (61).

64. Defendant willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after he revoked his consent to be called by them using an ATDS or pre-recorded voice.

65. Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be called by them using an ATDS or pre-recorded voice.

66. Defendant, Synchrony Bank repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

67. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

68. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Synchrony Bank, from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the MTCPA)

69. Plaintiff incorporates Paragraphs one (1) through sixty-one (62).

70. At all times relevant to this action Defendant is subject to and must abide by the law of Maryland, including Md. Code, Ann.com Law , §§ 14-3201-3202.

71. Defendant has violated Md. Code, Ann.com Law, §§ 14-3201-3202 by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family.

72. Defendant has violated Md. Code, Ann.com Law, §§ 14-3201-3202 by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his family.

73. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 14-3202, is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the MTCPA.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

## COUNT III
### (Violation of the Maryland Consumer Debt Collection Act)

74. Plaintiff incorporates Paragraphs one (1) through sixty-one (62).

75. The Maryland Consumer Debt Collection Act ("MCDCA") is a remedial statute that "protects consumers against certain threatening and underhanded methods used by debt collectors in attempting to recover on delinquent accounts." Spencer v. Hendersen-Webb, Inc., 81 F. Supp. 2d 582, 594 (D. Md. 1999).

76. Defendant is a "collector" as that term is defined in that it attempted to collect a consumer debt by making telephone call and sending letters to Plaintiff.

77. The alleged debts Defendant sought to collect arose from a consumer transaction because the alleged debts arose from credit accounts Plaintiff used for personal, family and household purposes.

78. The MCDCA states that a creditor may not "Communicate with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor." Md. Code Ann., Com. Law § 14-202(6).

79. Defendant violated Md. Code Ann., Com. L. § 14-202(6) by calling and texting Plaintiff so frequently using an ATDS, and so frequently after Plaintiff repeatedly asked Defendant to stop, that a reasonable person would expect Plaintiff to be harassed and abused.

80. Plaintiff was in fact harassed and abused by Defendant's behavior.

81. Defendant further violated Md. Code Ann., Com. L. §14-202(11) by engaging in "any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act."

82. The Defendant violated § 804(a)(1) of the FDCPA when even after the Plaintiff told them to stop calling, they continued to call him "at any…time…known or which should be known to be inconvenient to the consumer."

83. The Defendant violated § 806(5) of the FDCPA by "Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

84. As a proximate result of Defendant's violations of the law, the Plaintiff incurred actual damages including but not limited to physical manifestations of emotional distress in the form of loss of sleep, loss of appetite, panic attacks, rushes of adrenaline, anxiety, and interference with the ability to concentrate.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for actual damages including damages for emotional distress with or without accompanying physical manifestations and any other such relief the court may deem just and proper.

### COUNT IV
### (Violation of the Maryland Consumer Protection Act)

85. Plaintiff incorporates Paragraphs one (1) through sixty-one (62).

86. The prohibitions of the MCPA applies to "the collection of consumer debts." Md. Code Ann., Com. Law § 13-303(5).

87. The Plaintiff is a "consumer", the alleged debt was a "consumer debt" and the Defendant is a "person" as those terms are defined in Md. Code Ann. CL § 13-101

88. The Defendant violated the MCPA in two ways: 1) *per se* because a violation of the MTCPA and the MCDCA are both *per se* violations of the Maryland Consumer Protection Act. Md. Code Ann., Com. Law § 13-301(14)(iii) and (vii); and 2) by using unfair abusive, or deceptive trade practices in the collection of consumer debt. Md. Code Ann., Com. Law § 13-303(5). Specifically, it was unfair, abusive or deceptive to bombard the Plaintiff with robo-call collection calls, both before and even after he told the Defendant to stop.

89. The Plaintiff relied on the Defendant's implicit representation that it would abide by the law, and that it would transact its business characterized by good faith and fair dealing, as is required by Maryland law.

As a proximate result of Defendant's violations of the MCPA, the Plaintiff incurred actual damages including but not limited to physical manifestations of emotional distress in the form of loss of sleep, loss of appetite, panic attacks, rushes of adrenaline, anxiety, and interference with the ability to concentrate.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for actual damages, attorneys fee, costs and any other such relief the court may deem just and proper.

### COUNT V
### (Invasion of Privacy – Intrusion Upon Seclusion)

90. Plaintiff incorporates Paragraphs one (1) through sixty-one (62).

91. Defendant through its collection conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

92. All of the calls and texts made to Plaintiff's cell phone, and the additional calls to his home phone and work phone by Defendant and its agents were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

93. Defendant's persistent calls and texts to his cellular telephone, home telephone and work telephone, eliminated Plaintiff's right to be left alone.

94. Defendant's collection calls and texts disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, disrupted Plaintiff during work and continually frustrated and annoyed Plaintiff.

95. These persistent collection calls and texts eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with his cellular phone.

96. By calling and texting his cellular phone, calling his home phone and work phone, Plaintiff had no escape from these collection calls or texts either in his home or when he left the home.

97. By persistently calling Plaintiff's cellular phone, Defendant invaded Plaintiff's right to privacy and caused Plaintiff to suffer concrete and particularized harm.

98. Defendant's harassing collection conduct and tactic of repeatedly calling Plaintiff his cellular telephone after requests to stop is highly offensive to a reasonable person.

99. Defendant intentionally intruded upon Plaintiff's solitude and seclusion.

100.    As a result of Defendant's action or inaction, Plaintiff has been damaged.

101.    As a proximate result of Defendant's violations of the law, the Plaintiff incurred actual damages including but not limited to physical manifestations of emotional distress in the form of loss of sleep, loss of appetite, panic attacks, rushes of adrenaline, anxiety, and interference with the ability to concentrate.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for punitive damages, actual damages and any other such relief the court may deem just and proper.

Respectfully submitted,

*Heather H. Jones, Esq.*
Heather H. Jones, Esq.
*Pro Hac Vice to be Filed*
The Consumer Protection Firm, PLLC
401 East Jackson Street, Suite 2340

Tampa, FL 33602
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Heather@TheConsumerProtectionFirm.com

Peter A. Holland
Fed. Bar No. 10866
Emanwel J. Turnbull
Fed. Bar No. 19674
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Rd. Ste 230
Annapolis, MD 21403
Telephone: (410) 280-6133
Facsimile: (410) 280-8650
peter@hollandlawfirm.com
eturnbull@hollandlawfirm.com

*Attorneys for Plaintiff*

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: October 29, 2020

> *Heather H. Jones, Esq.*
> Heather H. Jones, Esq.
> *Pro Hac Vice to be Filed*
> The Consumer Protection Firm, PLLC
> 401 East Jackson Street, Suite 2340
> Tampa, FL 33602
> Telephone: (813) 500-1500
> Facsimile: (813) 435-2369
> Heather@TheConsumerProtectionFirm.com
>
>
> Peter A. Holland
> Fed. Bar No. 10866
> Emanwel J. Turnbull
> Fed. Bar No. 19674
> THE HOLLAND LAW FIRM, P.C.
> 914 Bay Ridge Rd. Ste 230
> Annapolis, MD 21403
> Telephone: (410) 280-6133
> Facsimile: (410) 280-8650
> peter@hollandlawfirm.com
> eturnbull@hollandlawfirm.com
>
> *Attorneys for Plaintiff*